**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____
                           :

**ANTHONY A. REYNOLDS,**        :
                           :        **CIVIL ACTION**
        **Plaintiff,**      :
                           :        **NO. 04 - 2136**
          **v.**           :
                           :

**ROBERT SMYTHE, WILLIAM BATISTA,** :
**STEVEN KILLIAN, JULIUS**      :
**QUARTAPELLA, and WILLIAM**    :
**SMINKEY,**                       :
          **Defendants.**     :
_____
                           :

**DuBOIS, J.**                                        **MARCH 9, 2006**

**M E M O R A N D U M**

## I.      INTRODUCTION

Plaintiff Anthony A. Reynolds ("plaintiff") filed suit under 42 U.S.C. § 1983 for alleged police misconduct on North Third Street, Darby, Pennsylvania on May 26, 2002. Presently before the Court is Defendants' Motion for Summary Judgment, filed by Police Chief Robert Smythe ("Chief Smythe") and Police Officers William Batista, Steven Killian, Julius Quartapella, and William Sminkey.

## II.      BACKGROUND

The evidence may be summarized as follows: On May 26, 2002, officers from the Darby Borough Police and the Colwyn Borough Police responded to a disturbance at 33 North Third Street in Darby, Pennsylvania. Plaintiff and defendants describe the disturbance as a fight on North Third Street, a residential street, although they present different accounts of exactly where the fight took place, the number of people involved, and the severity of the incident. The officers

who responded included Officers Batista, Killian, Quartapella, and Sminkey.

When the officers arrived at the scene, plaintiff – an African-American man, then twenty-five years old – was standing on the sidewalk in front of 19 North Third Street, some distance from the disturbance. The incident in question appears to have been triggered when Officer Sminkey ordered the plaintiff to move off the sidewalk. Plaintiff responded by sitting on steps adjacent to the sidewalk. The parties present different accounts of what followed.

Plaintiff's testimony of the encounter may be summarized as follows: Plaintiff obeyed the police order to move off the sidewalk, and he did not resist arrest or struggle with defendants. Nevertheless, Officer Sminkey forcibly handcuffed one of plaintiff's wrists, and then Officer Quartapella slammed plaintiff head-first into a parked car several times. Individually or in combination, Officers Batista, Killian, Quartapella, and Sminkey hit plaintiff in the ribs and legs with clubs. Officer Killian then placed a second handcuff on plaintiff's other wrist. After plaintiff was double handcuffed, Officer Batista slammed plaintiff into a parked police car. Next Officer Quartapella pepper sprayed plaintiff for about 30 seconds, causing plaintiff to temporarily lose his vision. Individually or in combination, Officers Batista, Killian, Quartapella, and Sminkey thereafter shoved plaintiff face first into a patrol car. At some point during the encounter, one of the officers hit plaintiff in the neck with a club, causing great pain.

Defendants' testimony of the encounter is dramatically different, and may be summarized as follows: Plaintiff refused to move off the steps adjacent to the sidewalk, despite orders from Officer Sminkey and then Officer Quartapella. Plaintiff then began to yell and curse at the officers, which caused a crowd of people to gather. Some people from the crowd also began to yell. Officer Sminkey next told plaintiff that he would be arrested for disorderly conduct and for

2

creating a disturbance. As Officer Sminkey placed a handcuff on one of the plaintiff's wrists,

plaintiff responded with profanity and physical resistance. Plaintiff attempted to pull away from

Officer Sminkey, and Officer Quartapella came to his assistance. The momentum of the struggle

brought the three individuals over the hood or trunk of a car. Officers Killian and Batista joined

the efforts of the other officers to subdue the plaintiff. At some point, Officer Batista yelled that

the plaintiff had grabbed Batista's groin.[1] Officer Quartapella instructed plaintiff to let go[2]; when

plaintiff did not comply, Quartapella pepper sprayed him.

     After the incident, plaintiff was transported to the Darby Borough Police Station, where

he was charged with simple assault, aggravated assault, harassment and stalking, recklessly

endangering another person, disorderly conduct, and resisting arrest or other law enforcement.

According to plaintiff, upon his release, he went to the emergency room for treatment. The record

before the Court does not include evidence of medical treatment.

     On May 27, 2002, plaintiff's mother, Luveina Reynolds, met with Chief Smythe, with

whom she had worked in the past. Ms. Reynolds testified that Chief Smythe told her that he "was

going to handle" and "take care of" the charges against her son. Luveina Reynolds Dep. 25, 28.

Chief Smythe testified that he told Ms. Reynolds that he would "negotiate . . . out" the charges

against her son. Robert Smythe Dep. 26. The charges were later withdrawn. Chief Smythe

testified that he construed the withdrawal of charges against plaintiff as an "agreement" between

---

[1] Officer Batista testified that he probably yelled, "He [plaintiff] grabbed me in the balls." William Batista Dep. 20. Officer Quartapella testified that Officer Batista yelled, "He [plaintiff] has my nuts. Let go," and "He's [plaintiff's] got my nuts. He has my nuts. Stop. Get him off me." Julius Quartapella Dep. 55, 58.

[2] Officer Quartapella testified that he instructed plaintiff three times to "release the officer." Julius Quartapella Dep. 59.

the police department and the Reynolds family to forget the incident.[3] Id. 33-34.

By letter dated March 28, 2003, plaintiff's counsel sent Chief Smythe a notice of claim against Officers Killian, Quartapella, and Sminkey, and several other police officers, for excessive use of force and false arrest of plaintiff on May 26, 2002.[4] Chief Smythe perceived the notice of claim as a breach of his agreement with the plaintiff's mother and plaintiff to withdraw

---

[3] According to Chief Smythe, "[t]he agreement was he [plaintiff] was going to go to Chicago, go to school, and be able to get this job that he wouldn't have a record for. That was her [plaintiff's mother] main concern. And that was going to be what we [the police department] were going to do for them [the Reynolds family]. I said to her – I specifically said to her, I don't want some day somebody coming back here and saying we did this or we did that. We don't want to be in the middle of that. She [plaintiff's mother] had no problem with that. All she wanted was for him [plaintiff] to be able to follow this career, whatever it was." Robert Smythe Dep. 34.

[4] The notice of claim was given by letter dated March 28, 2003 and addressed to Chief Smythe from Craig Thorpe (attorney for plaintiff). The notice states that it is "RE: Anthony Reynolds v. P.O. William Sminkey, Sgt. Gibney, P.O. Quartapella, P.O. Killian, P.O. Marcone, Darby Police Department." Neither Sergeant Gibney nor Office Marcone is a party to this lawsuit.

The notice, reproduced in full, explains:

Please be advised that I represent Anthony A. Reynolds for an incident which occurred on May 26, 2002, involving the borough of Darby Polcie Department. As you know on that day without probable cause my client Anthony A. Reynolds was approached by several of your police officers and was placed under arrest. Pursuant to the arrest unreasonable force was used against Mr. Reynolds and he was ultimately pepper sprayed while in handcuffs.

It appears the lead officer in this unnecessary and unwarranted use of force was patrol officer William Sminkey badge No. 71.

I ask that you accept this letter as a formal notice of claim against the above referred police officers and further ask that you conduct the appropriate investigation into this matter to ascertain how and why this incident occurred in hopes that the appropriate discipline is issued to protect the public interest.

I suggest that upon receipt of this letter you forward it to your liability carrier so that discussion can take place with regards to resolving this matter without litigation.

I look forward to your courtesies and corporations [sic] in this matter.

Very Truly Yours,
/s/ Craig L. Thorpe

the charges. As a result, Chief Smythe reinstated the charges on April 4, 2003.

In October 2003, plaintiff was involved in an unrelated incident. In November 2003, plaintiff was arrested on outstanding warrants for the unrelated incident and the May 26, 2002 incident. Plaintiff entered a <u>nolo</u> <u>contendere</u> plea for the unrelated incident, and a <u>nolo</u> <u>contendere</u> plea for the disorderly conduct and harassment charges stemming from the May 26, 2002 incident. At his deposition, plaintiff explained that, at the time of his <u>nolo</u> <u>contendere</u> plea, he "was really confused" and did not understand that he had pleaded <u>nolo</u> <u>contendere</u> to the disorderly conduct and harassment charges against him for the May 26, 2002 incident. Reynolds Dep. 72.

## III.   PROCEDURAL HISTORY

Plaintiff filed a Complaint in this Court on May 17, 2004, asserting five causes of action under 42 U.S.C. § 1983. Specifically, the Complaint alleges unreasonable use of force (Count One), unlawful detention (Count Two), and false arrest (Count Three) against all defendants, including Chief Smythe; and malicious prosecution (Count Four) and retaliation, harassment, and intimidation ("retaliation claim") (Count Five) against only Chief Smythe.

On June 24, 2005, defendants filed a motion for summary judgment. Plaintiff filed a response to this motion on or about July 15, 2005. Plaintiff's response conceded that the motion for summary judgment should be granted as to the claim against Chief Smythe for excessive use of force.

## IV.   STANDARD OF REVIEW

A court should grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A "genuine" issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" when it "might affect the outcome of the suit under the governing law." Id.

"In determining the facts, the court should draw all reasonable inferences in favor of the nonmoving party." Id. at 255; Highlands Ins. Co. v. Hobbs Group, LLC, 373 F.3d 347, 351 (3d Cir. 2004). The nonmoving party, however, cannot rely merely upon bare assertions, conclusory allegations, or suspicions to support its claim. Fireman's Ins. Co. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982); see also Anderson, 477 U.S. at 249-50 (stating that summary judgment may be granted if the evidence is "merely colorable" or "not significantly probative"). In a summary judgment motion, the moving party has the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. However, where the nonmoving party bears the burden of proof, it must "make a showing sufficient to establish the existence of [every] element essential to that party's case." Equimark Commercial Finance Co. v. C.I.T. Financial Services Corp., 812 F.2d 141, 144 (3d Cir. 1987), citing Celotex, 477 U.S. at 323-24. If reasonable minds can differ as to the import of the proffered evidence that speaks to an issue of material fact, summary judgment should not be granted.

## V.   DISCUSSION

### A.   Introduction

To state a claim under 42 U.S.C. § 1983, a plaintiff must show that defendants, acting under color of state law, deprived the plaintiff of rights secured by the Constitution or federal

statutes. 42 U.S.C. § 1983. In the instant case, plaintiff alleges, and defendants do not deny, that

they acted under color of state law. Accordingly, the Court turns to the next step in analyzing a

§ 1983 claim, which "is to identify the specific constitutional right allegedly infringed." Albright

v. Oliver, 510 U.S. 266, 271 (1994). In the Complaint, plaintiff alleges violations of his rights

under the Fourth and Fourteenth Amendments of the Constitution.

Claims of excessive use of force, unlawful detention, false arrest, and malicious

prosecution by law enforcement officers implicate the Fourth and Fourteenth Amendments. See

Graham v. Connor, 490 U.S. 386, 395 (1989) ("all claims that law enforcement officers have

used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other

'seizure' of a free citizen should be analyzed under the Fourth Amendment and its

'reasonableness' standard"); Donohue v. Gavin, 280 F.3d 371 (3d Cir. 2002) (noting that

plaintiffs may proceed with malicious prosecution claims under the Fourth Amendment);

Groman v. Twp. of Manalapan, 47 F.3d 628, 636 (3d Cir. 1995) ("false imprisonment claim

under [§ 1983] is based on the Fourteenth Amendment protection against deprivations of liberty

without due process of law"). Plaintiff's claims of excessive use of force, unlawful detention,

false arrest, and malicious prosecution are within the ambit of the Fourth and Fourteenth

Amendments.

In the Complaint, plaintiff also alleges retaliation by Chief Smythe. This claim is based

on Chief Symthe's decision to reinstate the charges of May 26, 2002 after Chief Smythe received

plaintiff's notice of claim against Officers Killian, Quartapella, and Sminkey. Like the other

claims, plaintiff based the retaliation claim on the Fourth and Fourteenth Amendments, and that

was incorrect. Plaintiff's retaliation claim may only be asserted under the First Amendment (and

the Fourteenth Amendment) because "an individual has a viable claim against the government

when he is able to prove that the government took action against him in retaliation for his

exercise of First Amendment rights." Anderson v. Davila, 125 F.3d 148, 160 (3d Cir. 1997)

(citing Mt. Healthy City School Dist. Bd. of Education v. Doyle, 429 U.S. 274 (1977)). However,

the Court need not determine whether the retaliation claim fails for not properly alleging a

constitutional violation under the First Amendment because, as explained in Part V.A.3, that

claim must fail for other reasons.

At the outset, the Court notes the far-reaching effects of plaintiff's nolo contendere plea

to the disorderly conduct and harassment charges arising out of the May 26, 2002 incident. In

Heck v. Humphrey, 512 U.S. 477 (1994), the Supreme Court held that "to recover damages for

allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions

whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove

that the conviction or sentence has been reversed on direct appeal, expunged by executive order,

declared invalid by a state tribunal authorized to make such a determination, or called into

question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for

damages bearing that relationship to a conviction or sentence that has not been so invalidated is

not cognizable under § 1983." Id. at 486-87. Pursuant to Heck, this Court concludes that the nolo

contendere plea bars plaintiff from recovering damages under § 1983 for unlawful detention,

false arrest, malicious prosecution, and retaliation.

The Court is aware that concurring and dissenting opinions in Spencer v. Kemna, 523

U.S. 1 (1998), question the applicability of Heck to an individual, such as plaintiff, who has no

recourse under the habeas corpus statute. See id. at 19-20 (Souter, J., concurring); id. at 21

(Ginsburg, J., concurring); id. at 25 n.8 (Stevens, J., dissenting). However, in Giles v. Davis, 427 F.3d 197 (3d Cir. 2005), the Court of Appeals for the Third Circuit resolved any doubts on this issue. The Giles ruling instructed district courts to disregard questions about the applicability of Heck in cases where an individual cannot seek habeas relief. Id. at *27-29. This Court follows Giles, and applies the Heck ruling to plaintiff's nolo contendere plea.

The Court acknowledges plaintiff's claim that he did not understand that he pled nolo contendere to the disorderly conduct and harassment charges arising out of the May 26, 2002 incident. However, this Court does not have jurisdiction to examine whether the plaintiff's nolo contendere claim was given voluntarily, knowingly, and intelligently "with sufficient awareness of the relevant circumstances and likely consequences." Brady v. United States, 397 U.S. 742, 748 (1970) (articulating the standards for properly administering a guilty plea). A challenge to the nolo contendere plea must first be raised in Pennsylvania state courts and plaintiff has failed to do so. Such a challenge cannot be initiated in this Court. Thus, this Court must assume the integrity of plaintiff's nolo contendere plea in analyzing plaintiff's § 1983 claims.

The Court will now turn to the liability of specific defendants.

**B.      Plaintiff's Claims Against Chief Smythe**

Plaintiff alleges claims of unlawful detention, false arrest, malicious prosecution, and retaliation against Chief Smythe. The Court concludes that, as a matter of law, none of plaintiff's claims against Chief Smythe can be sustained. The Court addresses these claims in turn.

**1.      False Arrest And Unlawful Detention Claims**

Chief Smythe is not liable for false arrest and unlawful detention. Under § 1983, supervisory liability cannot be predicated on respondeat superior, but must be based on personal

involvement. Plaintiff has not presented evidence to show that Chief Smythe was personally involved in the detention and arrest on May 26, 2002. Moreover, plaintiff's nolo contendere plea bars him from recovering damages on these claims, even if he had presented evidence of Chief Smythe's personal involvement. Thus, defendants' motion for summary judgment on these claims is granted. The subsequent analysis first addresses the lack of evidence of Chief Smythe's involvement and then examines the effects of plaintiff's nolo contendere plea.

The imposition of supervisory liability under § 1983 requires some affirmative conduct by the supervisor who played a role in the complained-of violation. See Andrews v. City of Philadelphia, 895 F.2d 1469, 1478 (3d Cir. 1990) (citing Rizzo v. Goode, 423 U.S. 362, 377 (1976)). The supervisor's involvement can be shown through allegations of personal direction, actual knowledge and acquiescence, or through proof of direct involvement by the supervisor. Id. (internal quotations and citations omitted). A supervisor also may be liable for his "own actions in adopting and maintaining a practice, custom or policy of [deliberate] indifference to instances of known" violations. Stoneking v. Bradford Area School Dist., 882 F.2d 720, 724-25 (3d Cir. 1989).

Plaintiff has provided no evidence that Chief Smythe participated in, personally directed, or knew of and acquiesced in the complained-of violations on May 26, 2002. The Court concludes that plaintiff's evidence does not raise a genuine issue of material fact as to Chief Smythe's participation in the arrest or detention of plaintiff. Moreover, even if plaintiff had introduced evidence of Chief Smythe's personal involvement in the arrest or detention, plaintiff's claims would fail. Under Heck v. Humphrey, the nolo contendere plea bars the plaintiff from recovering damages for the alleged false arrest and unlawful detention in a § 1983 action. See

10

Part V.A supra and Part V.B.2 infra. Accordingly, defendants' motion for summary judgment is granted on the unlawful detention and false arrest claims against Chief Smythe.

    **2.    Malicious Prosecution Claim**

    Chief Smythe is not liable for malicious prosecution because plaintiff cannot establish the requisite elements of this claim. To prove malicious prosecution under § 1983, the plaintiff must show that: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003) (citing Donohue v. Gavin, 280 F.3d 371, 379 (3d Cir. 2002)). If a plaintiff is unable to demonstrate any one of these five elements, the retaliation claim cannot be sustained.

    In the instant case, the Court focuses on the plaintiff's inability to prove the second element of the malicious prosecution claim, namely that the criminal proceeding ended in plaintiff's favor. "[T]he Pennsylvania evidence code draws a distinction between the permissible use of a nolo plea to prove the fact of conviction and the impermissible use of a nolo plea as evidence of guilt in a subsequent proceeding." United States v. Poellnitz, 372 F.3d 562, 568 (3d Cir. 2004). Based on this distinction, plaintiff's nolo contendere plea is evidence of plaintiff's conviction and the fact that the criminal proceedings did not end in his favor. In reaching this conclusion, the Court does not impermissibly use the nolo contendere plea as evidence of the

plaintiff's guilt.[5] Because the <u>nolo</u> <u>contendere</u> plea establishes that the criminal proceedings did not end in plaintiff's favor, the plaintiff is unable to meet his burden of proving malicious prosecution by Chief Smythe.

Plaintiff's evidence does not raise a genuine issue of material fact as to the claim of malicious prosecution against Chief Smythe. Thus, the defendants' motion for summary judgment on this claim is granted.

### 3.     Retaliation Claim

Chief Smythe is not liable for retaliation because plaintiff cannot establish the requisite elements of the claim. To succeed on a retaliation claim under § 1983, a plaintiff must prove that he engaged in protected activity, the government responded with retaliation, and the protected activity was the cause of the retaliation. <u>Marasco</u>, 318 F.3d at 512. In the instant case, defendants and plaintiff offer competing theories on the nature of the protected activity at issue. Defendants urge the Court to consider whether plaintiff was involved in protected activity during the May 26,

---

[5] The Third Circuit decision in <u>United States v. Poellnitz</u>, 372 F.3d 562 (3d Cir. 2004), is in accord. In that case, the Court of Appeals overturned a district court decision that construed a <u>nolo</u> <u>contendere</u> plea as evidence that the defendant committed a crime. <u>Id.</u> at 565. Unlike the district court in <u>Poellnitz</u>, this Court does not use plaintiff's <u>nolo</u> <u>contendere</u> plea as evidence of commission of a crime, but rather as evidence of conviction. <u>Poellnitz</u> permits this interpretation of the <u>nolo</u> <u>contendere</u> plea; indeed, it declared "a <u>nolo</u> plea is indisputably tantamount to a conviction." <u>Id.</u> at 566.

The effect of the <u>nolo</u> <u>contendere</u> plea in question is governed by state law. Under Pennsylvania law, "[i]n pleading nolo contendere, the defendant does not admit his guilt, but merely consents to being punished as if he were guilty." <u>Commonwealth v. Gunter</u>, 771 A.2d 767, 773 (Pa. 2001) (Cappy, J., concurring) (citing <u>North Carolina v. Alford</u>, 400 U.S. 25, 35 n.8 (1970); <u>Eisenberg v. Commonwealth</u>, 516 A.2d 333, 335 (Pa. 1986); <u>Commonwealth v. Boyd</u>, 292 A.2d 434, 435 (Pa. Super. 1972)). Indeed, "[t]he decisions of Pennsylvania's lower courts . . . reflect . . . the use of a <u>nolo</u> plea as evidence of the fact of conviction . . . ." <u>Poellnitz</u>, 372 F.3d at 569. Guided by Pennsylvania state evidentiary rules, this Court likewise uses the plaintiff's <u>nolo</u> <u>contendere</u> plea as evidence of the fact of his conviction, which is the basis for the Court's conclusion that the criminal proceedings did not end in his favor.

2002 incident. Plaintiff urges the Court to view the protected activity as the plaintiff's right to assert claims against defendants for constitutional violations without having charges against him reinstated. For the reasons set forth below, the Court determines that plaintiff's retaliation claim against Chief Smythe fails under both theories.

First, under defendants' theory, plaintiff cannot establish that he was engaged in protected activity during the May 26, 2002 incident. As discussed in Part V, supra, the Court may use plaintiff's nolo contendere plea to the disorderly conduct and harassment charges as evidence of his conviction. See United States v. Poellnitz, 372 F.3d at 568. This conviction precludes the plaintiff from claiming that he was engaged in protected activity during the May 26, 2002 incident. On this basis, the Court concludes that the plaintiff cannot prevail on the retaliation claim against Chief Smythe.

Even under the plaintiff's theory, he cannot succeed on the retaliation claim. Plaintiff argues that the protected activity is his right to file claims against defendants without Chief Smythe reinstating the charges arising out of the May 26, 2002 incident. However, under Heck v. Humphrey, because plaintiff pleaded nolo contendere to disorderly conduct and harassment, he is barred from recovering monetary damages for the alleged retaliation under § 1983. See Parts V.A and V.B.2 supra. Accordingly, plaintiff cannot prevail on the retaliation claim.

The Court concludes that plaintiff's evidence does not raise a genuine issue of material fact as to retaliation by Chief Smythe. Thus, defendants' motion for summary judgment on this claim is granted.

**C.      Plaintiff's Claims of Unlawful Detention and False Arrest Against Officers William Batista, Steven Killian, Julius Quartapella, and William Sminkey**

Plaintiff alleges that Officers Batista, Killian, Quartapella, and Sminkey unlawfully detained and falsely arrested him. The Court concludes that the unlawful detention and false arrest claims cannot be sustained.

As discussed in Parts V.A and V.B.2, supra, the Court may use plaintiff's nolo contendere plea as evidence of his conviction. See United States v. Poellnitz, 372 F.3d at 568. Under Heck v. Humphrey, the nolo contendere plea bars plaintiff from recovering damages under § 1983 for alleged unlawful detention and false arrest by Officers Batista, Killian, Quartapella, and Sminkey.

The Court concludes that plaintiff's evidence does not raise a genuine issue of material fact as to claims of unlawful detention and false arrest by Officers Batista, Killian, Quartapella, and Sminkey. Accordingly, defendants' motion for summary judgment on those claims is granted.

**D.      Plaintiff's Claims of Unreasonable Use of Force Against Officers William Batista, Steven Killian, Julius Quartapella, and William Sminkey**

Plaintiff alleges that Officers Batista, Killian, Quartapella, and Sminkey used unreasonable force against him. The defendants claim that they did not use unreasonable force and that, even if they did, they are entitled to qualified immunity. Plaintiff and defendants dispute historical facts material to whether defendants are entitled to qualified immunity. Because a jury must resolve these facts, the Court is unable to determine at this stage whether the defendants are entitled to qualified immunity. Accordingly, the Court denies defendants' motion for summary judgment on the unreasonable use of force claim against Officers Batista, Killian, Quartapella,

14

and Sminkey. The subsequent analysis sets forth the qualified immunity and excessive use of force standards, and then applies them to the instant case.

### 1.    Qualified Immunity

The Court first examines defendants' claims that they are entitled to qualified immunity. "Qualified immunity shields public officials performing discretionary functions from § 1983 and Fourteenth Amendment liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 192 (3d Cir. 2005) (internal quotations and citations omitted).

In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court urged district courts to resolve qualified immunity issues in excessive use of force cases "at the earliest possible stage in litigation," even where factual disputes preclude a grant of summary judgment on the underlying constitutional violation. Id. at 201. The Court stated that the requisites of a qualified immunity defense must be considered in proper sequence. Id. at 200. First, a district court must determine whether the facts alleged, taken in the light most favorable to plaintiff, show the officer's conduct violated a constitutional right. Id. at 201. "If the plaintiff fails to make out a constitutional violation, the qualified immunity inquiry is at an end; the officer is entitled to immunity." Bennet v. Murphy, 274 F.3d 133, 136 (3d Cir. 2002). If the district court determines that a constitutional violation could be made out on a favorable view of the parties' submissions, the next step is to ask whether the constitutional right was clearly established. Saucier, 533 U.S. at 201. This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition," and it "must be sufficiently clear that a reasonable official would understand that

15

what he is doing violates that right." Id. at 201, 202.

The Court of Appeals for the Third Circuit has enunciated the qualified immunity inquiry as follows: "First, we must determine whether the defendants violated 'clearly established' rights. This entails a finding of a constitutional or statutory violation as well as a finding that the violated right was clearly established at the time of the violation. Second, we determine whether a reasonable officer would have believed that his or her conduct deprived the plaintiff of his or her [clearly established] constitutional rights." Harvey v. Plains Twp. Police Dep't, 421 F.3d at 192.[6] In the Third Circuit, "qualified immunity is an objective question to be decided by the court as a matter of law," although "[t]he jury . . . determines disputed historical facts material to the qualified immunity question." Id. at 194 n.12 (quoting Carswell v. Borough of Homestead, 381 F.3d 235, 242 (3d Cir. 2004); Doe v. Groody, 361 F.3d 232, 238 (3d. Cir. 2004); Curley v. Klem, 298 F.3d 271, 279 (3d Cir. 2002)).

### 2.    Excessive Use of Force

The Fourth Amendment bars government officials from using excessive force in effectuating an arrest. Marasco, 318 F.3d at 515. "The test of reasonableness under the Fourth Amendment is whether, under the totality of the circumstances, the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations." Id. (quoting Graham v. Connor, 490 U.S. 386, 397

---

[6] The Court notes that the Third Circuit's formulation of the qualified immunity standard in Harvey v. Plains Twp. Police Dep't, 421 F.3d at 192, is slightly different from the Supreme Court's formulation of that standard in Saucier v. Katz, 533 U.S. at 200-02. Saucier instructs lower courts to examine whether a constitutional right was clearly established in the second-prong of a two-prong qualified immunity inquiry, whereas Harvey examines whether defendants violated a clearly established constitutional right in the first prong of a similar two-prong inquiry. This Court utilizes the Harvey formulation in its discussion in Part V.C.3, infra.

(1989)). To determine reasonableness, a court must consider, inter alia, the severity of the crime

at issue, whether the suspect posed an immediate threat to the safety of the officers or others,

whether he actively resisted arrest or attempted to evade arrest by flight, the duration of the

action, and the number of individuals with whom the police officers contended at one time. See

Graham, 490 U.S. at 396; Marasco, 318 F.3d at 515; Sharrar v. Felsing, 128 F.3d 810, 822 (3d

Cir. 1997). In examining the reasonableness of defendants' actions, this Court is mindful of the

Supreme Court's instruction that

> the 'reasonableness' of a particular use of force must be judged from the perspective of a
> reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . The
> calculus of reasonableness must embody allowance for the fact that police officers are
> often forced to make split-second judgments – in circumstances that are tense, uncertain,
> and rapidly evolving – about the amount of force that is necessary in a particular
> situation.

> Graham, 490 U.S. at 396-97.

### 3.      Qualified Immunity and Excessive Use of Force in This Case

To analyze the instant claim, the Court first examines whether the facts alleged, taken in

the light most favorable to plaintiff, establish that the defendants used excessive force in

violation of the plaintiff's clearly established constitutional rights. Then the Court must

determine whether a reasonable officer would have believed that his or her conduct deprived the

plaintiff of his clearly established constitutional rights.

Viewing the evidence in the light most favorable to plaintiff, the Court concludes that the

plaintiff has presented evidence of violations of his Fourth and Fourteenth Amendment rights,

which were clearly established at the time of the incident. According to the plaintiff, he only sat

on the steps adjacent to the sidewalk without resisting when the alleged unconstitutional conduct began and escalated – Officer Sminkey forcibly handcuffed plaintiff's wrist, Officer Quartapella slammed plaintiff head-first into a parked car several times, Officer Killian put a second handcuff on plaintiff in the struggle, Officer Batista slammed plaintiff into a parked police car, and, while plaintiff was double handcuffed, Officer Quartapella pepper sprayed plaintiff for about 30 seconds. In the midst of the struggle, plaintiff also testified that defendants hit him in the ribs, legs, and neck with clubs. If these facts are true, the Court concludes that these defendants' conduct exceeded the bounds of reasonableness, and that the plaintiff has adequately supported the claimed violations of clearly established Fourth and Fourteenth Amendment rights.

The Court now proceeds to the second prong of the qualified immunity analysis which requires the Court to determine whether, from the perspective of a reasonable officer in the same situation, the officers' conduct on May 26, 2002 violated plaintiff's constitutional rights which were clearly established at that time. The Court is unable to reach a conclusion on this issue because plaintiff and defendants vigorously contest how the May 26, 2002 incident occurred. Depending on whether a reasonable officer believed plaintiff's or defendants' version of the encounter, a reasonable officer could conclude either that a constitutional violation occurred or that it did not. The conflicting evidence certainly raises genuine issues of material fact. The appropriate fact finder in this situation is the jury. Thus, the Court denies the police officers' motion for qualified immunity.

Defendants' motion for summary judgment is denied to the extent that it seeks summary judgment on plaintiff's § 1983 claims for unreasonable use of force by Officers Batista, Killian, Quartapella, and Sminkey.

18

## VI.    OUTSTANDING ISSUES OF FACT UNDER FORBES

_____As required by Forbes v. Township of Lower Merion, 313 F.3d 144, 146 (3d Cir. 2002),
the Court must specify the facts relevant to qualified immunity that are in dispute. The Court
identifies those issues, inter alia, as follows:

- whether plaintiff obeyed Officer Sminkey's order to move off the sidewalk;

- whether plaintiff obeyed Officer Quartapella's order to move off the sidewalk;

- whether plaintiff resisted arrest, struggled with defendants, cursed and/or yelled, and if so, to what degree;

- whether plaintiff placed a hand on and/or struck any officer before any officer touched him;

- whether a crowd gathered during the struggle between plaintiff and defendants, and if so, its size and character;

- whether Officer Quartapella slammed plaintiff head-first into a parked car;

- whether Officers Batista, Killian, Quartapella, and/or Sminkey hit plaintiff in the ribs, legs, and neck with clubs;

- whether Officer Batista slammed plaintiff into a parked car while plaintiff was double handcuffed;

- whether plaintiff grabbed Officer Batista groin, and if so, whether plaintiff obeyed Officer Quartapella's order to let go;

- what plaintiff was doing when Officer Quartapella pepper sprayed plaintiff while plaintiff was double handcuffed[7]; and

- whether Officers Batista, Killian, Quartapella, and/or Sminkey shoved plaintiff face first into the patrol car;

At trial, a jury will have to resolve these and perhaps other factual disputes which are relevant to the question of whether Officers Batista, Killian, Quartapella, and Sminkey are entitled to qualified immunity.

## VII.   CONCLUSION

The Court grants the motion for summary judgment as to all of plaintiff's § 1983 claims against Chief Smythe. The Court also grants the motion for summary judgment as to plaintiff's § 1983 claims of unlawful detention and false arrest against Officers Batista, Killian, Quartapella, and Sminkey. The Court denies the motion for summary judgment as to plaintiff's § 1983 claims in all other respects. These rulings leave for trial plaintiff's § 1983 claims based on violations of his rights under the Fourth and Fourteenth Amendments for excessive use of force by Officers Batista, Killian, Quartapella, and Sminkey.

An appropriate order follows.

---

[7] Not in dispute is the fact that Officer Quartapella pepper sprayed plaintiff while plaintiff was in double handcuffs.

20

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

|  |  |  |
|---|---|---|
| | : | |
| ANTHONY A. REYNOLDS, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | NO. 04 - 2136 |
| v. | : | |
| | : | |
| ROBERT SMYTHE, WILLIAM BATISTA, | : | |
| STEVEN KILLIAN, JULIUS | : | |
| QUARTAPELLA, and WILLIAM | : | |
| SMINKEY | : | |
| Defendants. | : | |
| | : | |

---

**O R D E R**

**AND NOW**, this 9th day of March, 2006, upon consideration of Defendants' Motion for

Summary Judgment (Document No. 14, filed June 24, 2005), and Plaintiff's Response in

Opposition to Defendants' Rule 56(c) Motion for Summary Judgment (Document No. 18, filed

July 15, 2005), **IT IS ORDERED** that Defendants' Motion for Summary Judgment is

**GRANTED IN PART** and **DENIED IN PART**, as follows:

1.   Defendants' Motion for Summary Judgment is **GRANTED** as to all of plaintiff's

§ 1983 claims against Chief Smythe;

2.   Defendants' Motion for Summary Judgment is **GRANTED** as to plaintiff's

§ 1983 claims of unlawful detention and false arrest against Officers Batista,

Killian, Quartapella, and Sminkey.

3.      Defendants' Motion for Summary Judgment is **DENIED** as to plaintiff's § 1983

claims in all other respects.[8]

**IT IS FURTHER ORDERED** that the caption of the case is **AMENDED** to read as

follows:

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| | : | |
| **ANTHONY A. REYNOLDS,** | : | |
| | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | **NO. 04 - 2136** |
| **v.** | : | |
| | : | |
| **WILLIAM BATISTA, STEVEN KILLIAN,** | : | |
| **JULIUS QUARTAPELLA, and WILLIAM** | : | |
| **SMINKEY** | : | |
| **Defendants.** | : | |
| | : | |
| | : | |
| | : | |

                                              **BY THE COURT:**

                                              **/s/ Honorable Jan E. DuBois**
                                              **JAN E. DUBOIS, J.**

_____

   [8] This ruling leaves for adjudication plaintiff's § 1983 claims based on violations of his rights under the Fourth and Fourteenth Amendments for excessive use of force by Officers Batista, Killian, Quartapella, and Sminkey.

2